UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff | § | |
| v. | § | CIVIL ACTION NO. 4:18-cv-1310 |
| | § | |
| $4,524.50 SEIZED FROM BANK OF | § | |
| AMERICA ACCOUNT *1898; | § | |
| $10,370.98 SEIZED FROM JP MORGAN | § | |
| CHASE BANK ACCOUNT *2862; | § | |
| $28,494.22 SEIZED FROM WELLS | § | |
| FARGO ACCOUNT *1067; | § | |
| $230,815.11 SEIZED FROM WELLS | § | |
| FARGO ACCOUNT *0957; | § | |
| NORTHWEST MUTUAL INVESTMENT | § | |
| SERVICE ACCT *3023; | § | |
| NORTHWEST MUTUAL INVESTMENT | § | |
| SERVICE ACCT *6772; | § | |
| NORTHWEST MUTUAL INVESTMENT | § | |
| SERVICE ACCT, "CC PHARM"; | § | |
| NORTHWEST MUTUAL INVESTMENT | § | |
| SERVICE ACCT *9134; | § | |
| $3,670.00 IN LIQUIDATED CASHIER'S | § | |
| CHECKS; and | § | |
| $345,424.09 IN US CURRENCY, | § | |
| Defendants. | § | |

**AMENDED VERIFIED COMPLAINT FOR FORFEITURE IN REM**

The United States of America files this action for forfeiture and alleges upon information and belief:

*Nature of Action*

1.     This is an action to forfeit property to the United States.

*Defendants in Rem*

2.      The Defendant Properties are:

   a) $4,524.50 seized from Bank of America account *1898;

   b) $10,370.98 seized from JP Morgan Chase Bank account *2862;

   c) $28,494.22 seized from Well Fargo Bank account *1067;

   d) $230,815.11 seized from Wells Fargo Bank account *0957;

   e) Northwest Mutual Investment Service account *3023;

   f) Northwest Mutual Investment Service account *6772;

   g) Northwest Mutual Investment Service account "CC Pharm";

   h) Northwest Mutual Investment Service account *9134;

   i) $3,670.00 from nine cashier's checks made out to Frasiel Hughey and seized at his residence in Houston, Texas; and

   j) $345,424.09 in U.S. currency seized from the Frasiel Hughey residence in Houston, Texas.

The Defendant Properties were seized on or between November 15, 2017, through November 28, 2017, and will remain in the custody of the United States Marshals Service of the Southern District of Texas.

*Jurisdiction and Venue*

3.      The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1355(b)(1), 1391(b), and 1395.

*Statutory Basis for Forfeiture*

4.      Title 21 U.S.C. § 881(a)(6) provides for the forfeiture of money and other things of value furnished or intended to be furnished in exchange for a controlled substance, all proceeds traceable to such an exchange, and all moneys used or intended to be used to facilitate a violation of the Controlled Substances Act.  Underlying violations of the Act include 21 U.S.C. § 841 (Distribution of Controlled Substances) and 21 U.S.C. § 846 (Conspiracy to Distribute Controlled Substances).

*Facts*

CC Pharmacy

5.      CC Pharmacy, located at 2656 South Loop West, Suite 395, Houston, Texas 77054, is a registered pharmacy in the State of Texas.  There are also locations in Austin, Texas, and Round Rock, Texas.

6.      CC Pharmacy handles Schedule II-V controlled substance under DEA Number FC5944699.  At the relevant times, it was registered with the State of Texas State Board of Pharmacy under license Number 30743.

7.      CC Pharmacy does not appear to have any retail business with individual patients bringing legitimate prescriptions to be filled.  The Texas Board of Pharmacy tracks all controlled-substance prescriptions filled by Texas pharmacies in the Prescription Monitoring Program (hereinafter "PMP") database.   As of April 23, 2018, a search of the PMP database reflects that CC Pharmacy has filled no prescriptions.

8.      According to Texas Secretary of State Records, Clint Carr ("Carr") is the owner of CC Pharmacy and Dustin Curry ("Curry") is the Operations Manager.  There is

3

reason to believe that Carr and Curry have set up CC Pharmacy locations as "fronts" established to enable the purchase of controlled substances from pharmaceutical distributors, with the purpose of then diverting the controlled substances into the black market for sale in exchange for cash.

9.     Oxycodone and hydrocodone are Schedule II controlled substances and are highly addictive.  CC Pharmacy orders large amounts of controlled substances, namely oxycodone and hydrocodone, that are delivered from legitimate vendors by FedEx and UPS.  Carr and Curry  sign for and accept packages of these controlled substances.

10.     Oxycodone, hydrocodone, alprazolam, and carisoprodol are component drugs used by traffickers to produce a "Houston Cocktail."  In combination, each drug intensifies the effects of the other, producing a greater "high."

11.     CC Pharmacy sold oxycodone and hydrocodone and other drugs for cash, and much of that cash was deposited in the business bank accounts.  The bank accounts associated with CC Pharmacy received over $4 million in cash deposits between January 2016 and June 2017.

Controlled Substances for Cash

12.     There is reason to believe that Frasiel Hughey ("Hughey") is a Houston resident involved in the purchase of controlled substances from CC Pharmacy in exchange for cash payments.

13.     In July 2017, an individual carrying a backpack entered CC Pharmacy.  In the backpack the subject carried out of the pharmacy, law enforcement officers found 3 bottles of oxycodone containing 360 tablets, and 17 bottles of hydrocodone containing

2,040 tablets.   Officers found a CC Pharmacy invoice reflecting that the subject paid

$8,400.00 for the controlled substances.  Officers also found multiple written prescriptions,

with various patient names.

       14.     There is reason to believe that other individuals also purchased large amounts

of controlled substances for cash from CC Pharmacy, and that this activity is the only

business CC Pharmacy engages in.  The drugs the individuals received from CC Pharmacy

included but are not limited to oxycodone, hydrocodone, carisoprodol, and alprazolam.

       15.     There is reason to believe that some individuals who purchased large

amounts of controlled substances from CC Pharmacy obtained the cash to buy the drugs

from Hughey at his residence; and that they delivered the CC Pharmacy drugs to the

Hughey residence.

       16.      CC Pharmacy exhibits multiple characteristics that indicate it has been

dispensing controlled substances in violation of law, among them:

(1)     It sells controlled substances for cash at over-market prices;

(2)     It sells large quantities of drugs to a single individuals presenting
multiple prescriptions;

(3)     It provides controlled substances in exchange for multiple
prescriptions without verifying authenticity;

(4)     It does not accept insurance payments;

(5)     It deposits large amounts of cash in its bank accounts;

(6)     It ranks among the highest in Houston, when compared to other
pharmacies, for the purchase of oxycodone and hydrocodone; and

(7)     It does not appear to sell to individual patients with legitimate
prescriptions, as the PMP database does not reflect that CC
Pharmacy has filled any prescriptions.

Case 4:18-cv-01310   Document 3   Filed on 07/16/18 in TXSD   Page 6 of 9


The Defendant Properties are Subject to Forfeiture

17.     Criminal proceeds collected by CC Pharmacy for the controlled substance transactions were deposited into CC Pharmacy bank accounts.  The criminal proceeds were then transferred to other accounts, including being distributed to the personal bank accounts of Carr and Curry as payroll and as direct transfers.  Criminal proceeds were also transferred to Northwest Mutual Investment Service (whether directly by CC Pharmacy or through Carr and Curry bank accounts) for investments and life insurance.

18.     Each Defendant Property listed below is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) as the proceeds of controlled substance transactions in violation of 21 U.S.C. §§ 841 and 846:

   a) Defendant $4,524.50 was seized from a CC Pharmacy account which contained criminal proceeds of the controlled substance transactions;

   b) Defendant $10,370.98 was seized from a Carr bank account into which proceeds were deposited as payroll (the "Carr Payroll Account") by CC Pharmacy accounts;

   c) Defendant $28,494.22 was seized from a Curry bank account into which proceeds were deposited as payroll (the "Curry Payroll Account") by CC Pharmacy accounts;

   d) Defendant $230,815.11 was seized from a Curry bank account that was funded with proceeds from the Curry Payroll Account;

   e) Defendant Northwest Mutual Investment Service account *3023 was seized because it was funded with proceeds by the Curry Payroll Account;

   f) Defendant Northwest Mutual Investment Service account *6772 was seized because it was funded with proceeds by the Carr Payroll Account and other CC Pharmacy accounts;

g) Defendant Northwest Mutual Investment Service account "CC Pharm" was seized because it was funded with proceeds from CC Pharmacy accounts; and

h) Defendant Northwest Mutual Investment Service account *9134 was seized because it was funded with proceeds by the Curry Payroll Account and other CC Pharmacy accounts.

19.     There is reason to believe that individuals would pick up cash at the Hughey residence to use to purchase controlled substances from CC Pharmacy and that they would bring the controlled substances from CC Pharmacy back to the Hughey residence.

20.     Each of the additional Defendant Properties listed below is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) as property furnished or intended to be furnished in exchange for a controlled substance, or as property constituting or traceable to the proceeds of controlled substance transactions, all in violation of 21 U.S.C. §§ 841 and 846:

i) $3,670.00 from nine cashier's checks made out to Frasiel Hughey and seized at his residence in Houston, Texas; and

j) $345,424.09 in U.S. currency seized from the Frasiel Hughey residence in Houston, Texas.

<u>NOTICE TO ANY POTENTIAL CLAIMANT</u>

YOU ARE HEREBY NOTIFIED if you assert an interest in the property subject to forfeiture and want to contest the forfeiture, you must file a verified claim which fulfills the requirements set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.  The verified claim must be filed no later than 35 days from the date this complaint was sent to you in accordance with Rule G(4)(b); or, if

this Complaint was not sent to you, no later than 60 days after the first day of publication

of notice on an official internet government forfeiture site, in accordance with Rule

G(5)(a)(ii)(B).

An answer or a motion under Fed. R.Civ.P. 12 must be filed no later than 21 days

after filing the claim.  The claim and answer must be filed with the United States District

Clerk for the Southern District of Texas, and a copy must be served upon the undersigned

Assistant United States Attorney at the address provided in this Complaint.

*Conclusion*

The United States requests a judgment of forfeiture forfeiting the Defendant

Properties to the United States with such other relief to which the United States may be

entitled.

Respectfully submitted,

RYAN K. PATRICK
United States Attorney

By:    s/Abe Martinez
       Abe Martinez
       Kristine E. Rollinson
       Assistant United States Attorneys
       United States Attorney's Office
       Southern District of Texas
       1000 Louisiana, Suite 2300
       Houston, Texas 77002
       (713) 567-9349 (office)
       (832) 530-0459 (cell)
       abe.martinez@usdoj.gov

*Verification*

I, Gerrit Wolfhagen, a Task Force Officer with the United States Drug Enforcement Administration, hereby affirm and verify that I have read the Verified Complaint for Forfeiture in Rem and that the facts set forth in in paragraphs 2 and 5 - 20 of the Complaint are true and correct to the best of my knowledge and belief.

Gerrit Wolfhagen
Task Force Officer
U.S. Drug Enforcement Administration

Sworn and subscribed before me, the undersigned authority, on July __16__, 2018.

Notary Public in and for the State of Texas

My commission expires: 9/25/2020